## Skelley v. Crutchfield.

*Negligence—Master and servant—Fall of elevator.*

In an action by an employee against his employer to recover damages for personal injuries sustained by reason of the fall of an elevator, a verdict and judgment for plaintiff will be sustained where the evidence tends to show that for at least a month prior to the accident the elevator was in a dangerous condition; that complaint was made to one of the defendants; that the employees were thereupon forbidden to ride thereon, but directed to use it for transporting freight; that it had dropped with a load a short time before the accident; that plaintiff was using it as directed by the defendants and, in doing so, without any fault of his, it suddenly, without any warning, dropped to the cellar carrying him with it; that the elevator was without safety appliances, except counter balancing weights which were insufficient to hold the elevator up if the beveled gear by which it was operated separated to the slightest extent.

Argued April 11, 1901. Appeal, No. 123, April T., 1901, by defendants, from judgment of C. P. No. 1, Allegheny County, Sept. T., 1898, No. 54, on verdict for plaintiff in case of Bernard Skelley v. James S. Crutchfield and Robert B. Woolfolk, trading as Crutchfield & Woolfolk. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Trespass for personal injuries. Before COLLIER, J.

At the trial it appeared that the plaintiff was injured while in the defendants' employment by the fall of an elevator on January 18, 1898. The circumstances of the accident are fully stated in the opinion of the Superior Court. The court refused to give binding instructions for defendant.

Verdict and judgment for plaintiff for $250. Defendants appealed.

198; (1901).]    Assignment of Errors—Opinion of the Court.

*Error assigned* was in refusing to give binding instructions for defendant.

*W. K. Jennings*, for appellant.—The evidence of the defendants' negligence was insufficient to submit to the jury: Spees v. Boggs, 198 Pa. 112; Stearns v. Ontario Spinning Co., 184 Pa. 519; East End Oil Co. v. Penna. Torpedo Co., 190 Pa. 350; P. & R. R. R. Co. v. Hughes, 119 Pa. 301; Pawling v. Hoskins, 132 Pa. 617; Mixter v. Imperial Coal Co., 152 Pa. 395; Wojciechowski v. Spreckels's Sugar Refining Co., 177 Pa. 57; Higgins v. Fanning & Co., 195 Pa. 599; Reese v. Clark, 146 Pa. 465; Ford v. Anderson, 139 Pa. 261; Welsh v. Erie, etc., R. R. Co., 181 Pa. 461.

*F. C. McGirr*, of *Marron & McGirr*, for appellee, cited: Patterson v. Pittsburg & Connellsville R. R. Co., 76 Pa. 393; Reese v. Clark, 146 Pa. 465.

OPINION BY BEAVER, J., May 23, 1901:

The court below refused to give binding instructions for defendant and the failure to do so is the only assigned error.

The plaintiff in pursuance of his regular employment by defendants was engaged in lowering potatoes from the second story of defendants' warehouse by means of an ordinary freight elevator. Whilst so engaged, the elevator suddenly dropped, plaintiff fell with it and was injured. Who was responsible? The court properly instructed the jury that it was incumbent upon the plaintiff to establish by the weight of the evidence that the defendants were guilty of negligence and that such negligence was the cause of the accident in and by which plaintiff was injured.

No fault is found with the general instructions, and all of defendants' points for charge were affirmed except the first, " Under all the evidence, the verdict should be for the defendant." Was there anything for the jury?

The evidence is undoubtedly contradictory, very much so, but in such cases, unless the contention of the plaintiff be inherently or physically impossible, or carries with it facts, such as contributory negligence, which will prevent a recovery in law, the intervention of a jury is necessary. The elevator in

question was quite simple in construction and was operated by means of a bevel gear, which is a mechanical device having beveled teeth for transmitting rotary motion at an angle. The beveled wheels operated at a right angle. The driver, or wheel which communicated the power, was fastened upon a shaft to which all the operating machinery, including the safety appliances, were attached. The follower or wheel to which the power was communicated was fastened upon a shaft at a right angle to the operating shaft by means of a key or pin working in a groove in the shaft. There were no safety devices or appliances, apart from those connected with the operating shaft, upon the elevator, except counterbalancing weights which outweighed the platform and attachments, and which, in the absence of freight, carried the elevator constantly upward. The beveled teeth were one half to three quarters of an inch in depth, but what the actual extent of their bite or distance which they interlocked is not shown. The elevator had been in use a number of years.

The testimony of the plaintiff tends to show that for at least a month prior to the accident complained of the elevator was in a dangerous condition; that complaint was made to one of the defendants, which is practically admitted; that the employees were thereupon forbidden to ride thereon but directed to use it for transporting freight; that it had dropped with a load of onions a short time before the accident to the plaintiff; that plaintiff was using it as directed by the defendants and, in doing so, without any fault of his, it suddenly, without any warning, dropped to the cellar, carrying him with it and inflicting the injury complained of. The plaintiff could assign no cause for the accident; he knew nothing about the mechanical construction of the elevator; if the jury believed his witness Fearst, however, they would have had little difficulty in assigning an adequate cause.

We have examined the case with more than ordinary care, because the writer was impressed at the argument with the theory of defendants' counsel as to the physical impossibility of the accident occurring as testified to by plaintiff, but the slightest loosening of the wheel upon the elevator shaft and a slight backward thrust of the driver upon the operating shaft, either or both of which were quite possible and could be found under the

evidence, might separate the bevel gear by a hair's breadth and leave the elevator at the mercy of the universal law of gravitation, except as it was controlled by the counterbalancing weights, which under the evidence were not sufficient to neutralize its influence. The case is quite as strong as Murphy v. Crossan, 98 Pa. 495, which the Supreme Court said must go to a jury, and we can see no error in its submission to that tribunal.

Judgment affirmed.